GILMORE STEEL CORPORATION,
OREGON STEEL MILLS
DIVISION, Plaintiff,

v.

UNITED STATES, Defendant,

and

Pohang Iron and Steel Company,
Ltd., Intervenor.

Court No. 86–05–00606.

United States Court of
International Trade.

Oct. 6, 1987.

Heller, Ehrman, White & McAuliffe, John H. Cutler, Rene P. Tatro and Eric J. Sinrod, San Francisco, Cal., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Jeanne E. Davidson, for defendant; Lisa Koteen, Atty. Advisor, Dept. of Commerce, Washington, D.C., of counsel.

Mudge Rose Guthrie Alexander & Ferdon, N. David Palmeter, Donald B. Cameron, Jr. and Julie C. Mendoza, Washington, D.C., for intervenor.

## OPINION

TSOUCALAS, Judge:

This action is before the Court, pursuant to USCIT R. 56.1, on cross-motions for judgment on an agency record. It raises a question of first impression regarding the Commerce Department's authority to revoke an outstanding antidumping duty order.

### Background

On August 22, 1984 the International Trade Administration of the Department of Commerce (hereinafter "ITA" or "Commerce") issued an antidumping order covering steel plate from the Republic of Korea. 49 Fed.Reg. 33,298 (1984). Thereafter, on May 8, 1985, the governments of the United States and Korea entered into a voluntary restraint arrangement ("VRA") covering steel plate as well as other steel products. In return for quantitative restrictions on imports, the VRA contemplated that existing antidumping or countervailing duty orders on covered products be terminated.[1]

---

1. The VRA provides in part that:

2. *Condition—Withdrawal of petitions; new petitions*

(a) The entry into effect of this Arrangement is conditional upon:

. . . .

(2) The initiation of the legal process by or on behalf of the ROKG [Korea] or the relevant producers to terminate all existing coun-

tervailing duty and antidumping duty orders on covered products listed in Appendix A before March 30, 1985. Should this process not result in the termination of these orders within a reasonable period, the ROKG shall consult with the U.S. to determine what mutually agreeable action should be taken.

After receiving "model letters" supplied by Commerce, a majority of U.S. steel producers wrote to the agency expressing their desire that the antidumping order at issue here be revoked.[2] Based upon the lack of interest of the domestic industry, Commerce proceeded to publish notice of its intention to review the order, pursuant to § 751(b) of the Tariff Act of 1930, 19 U.S.C. § 1675(b), and its tentative determination to revoke. 50 Fed.Reg. 50,648 (1985). Following a hearing, Commerce terminated a previously commenced administrative review[3] of the antidumping order and issued final notice of revocation. 51 Fed.Reg. 13,042 (1986). At all times, plaintiff, Gilmore Steel Corp. ("Gilmore"), has opposed revocation of the order.

### Issue

The issue presented is whether Commerce, over the opposition of the petitioner in the underlying antidumping investigation, may properly revoke an antidumping duty order solely on the basis of the expression of a lack of support by a majority of the domestic industry.

### Discussion

The antidumping law, in relevant part, provides that Commerce:

> may revoke, in whole or part, a countervailing duty order or an antidumping duty order, or terminate a suspended investigation, after review under this section.

*Declaration of Eric J. Sinrod in Support of Motion for Judgment Upon an Agency Record,* Exhibit A, Voluntary Restraint Arrangement at 2.
A letter from the Deputy United States Trade Representative, which is part of the VRA, further provides that:
> if revocation does not take place within a reasonable period of time, the Government of the United States of America will agree to the termination of the Arrangement with respect to those products subject to the remaining order. In determining what constitutes a reasonable period of time, due consideration shall be given to the reason for the delay.

*Declaration of Eric J. Sinrod in Support of Motion for Judgment Upon an Agency Record,* Exhibit A, Letter from Robert E. Lighthizer to Kim Chulsu at 4 (May 8, 1985).

**2.** Gilmore claims that the majority of Korean steel plate imports are targeted to the West Coast and that the other domestic parties do not

Tariff Act of 1930, § 751(c), 19 U.S.C. § 1675(c) (1982 & Supp. III 1985). The Court in *Manufacturas Industriales de Nogales, S.A. v. United States,* 11 CIT ——, 666 F.Supp. 1562 (1987) has commented: "[s]elf-evidently, this provision permits the ITA to revoke an order once it has completed a review in accordance with subsection (a) of section 1675." *Id.* at ——, 666 F.Supp. 1562 (citing *Matsushita Elec. Indus. Co. v. United States,* 823 F.2d 505, 506 (Fed.Cir.1987)); *see also Freeport Minerals Co. v. United States,* 776 F.2d 1029, 1032 (Fed.Cir.1985) ("The 'review' referred to in 19 U.S.C. § 1675(c) ... is mandated by 19 U.S.C. § 1675(a), 'Periodic review of amount of duty.' ").

Commerce's implementing regulation, 19 C.F.R. § 353.54 (1987), provides in part:

> (a) *In general.* Whenever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order or a suspended investigation are no longer being made at less than fair value within the meaning of section 731 of the Act and is satisfied that there is no likelihood of resumption of sales at less than fair value, he may act to revoke or terminate, in whole or in part, such Order or Finding or suspended investigation. Ordinarily, consideration of such revocation or termination will be made only subsequent to a review as described in § 353.53 of this part.

produce steel plate in that region of the country. Hence, according to Gilmore, a majority of the domestic industry is willing to forego the fair pricing protection provided by the antidumping order with respect to steel plate in favor of quantitative restrictions on other steel products. *See Plaintiff's Motion for Judgment Upon an Agency Record,* at 15.

**3.** *See* Tariff Act of 1930, § 751(a), 19 U.S.C. § 1675(a) (1982 & Supp. III 1985).

Prior to amendment, *see* Trade & Tariff Act of 1984, Pub.L. 98–573, § 611(a)(2), 98 Stat. 3031 (1984), § 1675(a) provided automatically for annual administrative review of an antidumping order. Under current law, which is effective with respect to antidumping investigations initiated on or after Oct. 30, 1984, *see* § 626(b)(1), 98 Stat. at 3042, such review is conducted only upon request.

Against this background, the government urges that revocation is proper once a majority of the domestic industry, for whatever reason, no longer supports the continuation of an antidumping order, even in the absence of a review of the occurrence of dumping. Plaintiff, relying principally on the clear meaning of § 751(b), counters that revocation is improper here given the failure to complete a review of the affirmative determination regarding the existence of less-than-fair-value sales. *See Plaintiff's Motion for Judgment Upon an Agency Record* at 6–7. Gilmore contends that the revocation amounts to a substitution of the VRA for the antidumping order based on a preference for the former by a majority of the domestic industry. *Plaintiff's Reply Memorandum* at 6–8. Defendant, in the course of rejecting these arguments, asserts that:

the revocation was based not upon the VRA, but rather upon the domestic industry's lack of interest in the continuation of the antidumping duty order. While the domestic industry cited the VRA as an example of a 'changed circumstance' warranting review of the order, the reason or reasons for the domestic industry's lack of interest are irrelevant from [Commerce's] point of view.

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment on the Agency Record* at 20 (citation to administrative record omitted) (hereinafter "Defendant's Memorandum at ——"). In support of its position, the defendant offers arguments based on the statute, Commerce's implementing regulations, and judicial precedent.

The government interprets the statutory language "after review under this section" contained in § 1675(c) as referring to either review under § 1675(a) or § 1675(b). *Defendant's Memorandum* at 9. Under the defendant's view, to avoid rendering § 1675(b) mere surplusage, that subsection must be construed as providing for something other than the determination of actu-

al antidumping duties for a given time period pursuant to § 1675(a). To this end, the defendant argues that § 1675(b) provides for a review of "changed circumstances." *Id.* at 12. Defendant apparently concludes that upon ascertaining that majority support for the antidumping order had dissolved, its § 1675(b) review was complete and revocation was therefore proper.

As further authority for Commerce's determination, the defendant relies upon the following regulation:

(c) *Revocation or termination by the Secretary.* The Secretary may on his own initiative revoke a Finding or Order or terminate a suspended investigation after three years if he is satisfied that (1) there is no likelihood of resumption of imports of the merchandise to the United States the sale of which has been made at less than fair value, or (2) the sales at less than fair value have been eliminated, or (3) other changed circumstances warrant a revocation of the Finding or Order or the termination of a suspended investigation.

19 C.F.R. § 353.54(c) (1987).[4] Although subsections (c)(1) and (c)(2) undeniably envision an inquiry into the occurrence of dumping, defendant suggests that subsection (c)(3) permits the agency to revoke solely upon the presence of other changed circumstances.

Additionally, defendant attempts to engraft the holding of *Gilmore Steel Corp. v. United States,* 7 CIT 219, 585 F.Supp. 670 (1984), onto the circumstances of this case. The *Gilmore* court held that a petitioner lacking the support of a majority of the domestic industry cannot offer an antidumping petition "on behalf of an industry" as required by the relevant statute. *Gilmore,* 7 CIT at 226, 585 F.Supp. at 676. Defendant reasons that if a petition may not properly be offered when a majority of the domestic industry does not support it, then "the [Commerce] Department should not be required to perpetuate an antidump-

4. The Court refers to this regulation solely to present defendant's position. Therefore, no consideration is given to whether Commerce's decision is more properly considered to be a

revocation based upon application by a party to the proceeding, *see* § 353.54(b), or whether Commerce has complied with the three year waiting period specified in § 353.54(c).

ing duty order when a substantial majority of the domestic industry requests revocation." *Defendant's Memorandum* at 16.

Section 1675(a) provides for periodic review of the basis and amount of duty to be assessed under an antidumping duty order. *Matsushita*, 823 F.2d at 506. Section 1675(b), entitled "Reviews upon information or request" provides in part:

(1) **In general.**—Whenever the administering authority or the Commission receives information concerning, or a request for the review of ... an affirmative determination made under section ... 1673d(a), 1673d(b) ... of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register.

Tariff Act of 1930, § 751(b), 19 U.S.C. § 1675(b) (1982 & Supp. III 1985).

It may be true—and plaintiff does not argue otherwise—that the lack of interest on the part of the domestic industry constitutes "changed circumstances" sufficient to warrant review. Nevertheless, the Court cannot conclude that the identification of that lack of interest ends Commerce's obligation under the statute. Section 1675(b) demands, by its plain language, that the agency conduct a review of its affirmative determination. As stated by the Court in *American Permac, Inc. v. United States*, 10 CIT ——, 656 F.Supp. 1228 (1986), *appeal docketed*, No. 87–1159 (Fed.Cir. Jan. 21, 1987): "[t]he antidumping law reserves to the Commerce Department (the 'administering authority') questions pertaining to whether and to what extent merchandise is being dumped, and—in 751(b) reviews—whether dumping is likely to continue or resume if a dumping order is revoked." *American Permac*, 10 CIT at ——, 656 F.Supp. at 1234.[5] In this case,

Commerce failed to complete an administrative review and, in essence, chose to revoke because of the change in circumstances. This approach has been condemned by our appellate court:

As an initial matter, we reject the view that a decision to undertake review creates an inference that the outstanding order is no longer necessary. A decision to undertake a review is a threshold decision which merely sets the review proceedings in motion and has no bearing on the merits. The evidence submitted in support thereof may or may not be persuasive on the issue of revocation.

*Matsushita Elec. Indus. Co. v. United States*, 3 Fed.Cir. (T) at 50, 750 F.2d at 932, *rev'g on other grounds*, 6 CIT at 31, 569 F.Supp. at 859 ("the finding of changed circumstances sets in motion the review process").

A cardinal principle of statutory construction states that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (unanimous). A court generally assumes that "the legislative purpose is expressed by the ordinary meaning of the words used." *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). Ordinarily, if a court "find[s] the terms of a statute unambiguous, judicial inquiry is complete." *Burlington N. R.R. v. Oklahoma Tax Comm'n*, —— U.S. ——, ——, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (unanimous) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). Assuming, however, that in this case it is appropriate to resort

---

**5.** *See also Matsushita Elec. Indus. Co.*, 6 CIT 25, 27–28, 569 F.Supp. 853, 856–57 (1983), *rev'd on other grounds*, 3 Fed.Cir. (T) 44, 750 F.2d 927 (1984) (emphasis added):

In sum then, the choices of a party seeking a "changed circumstances" review under section 751(b) are two. *It can seek review by the ITA on the question of sales at less than fair value and, if the ITA still finds the presence or*

*likelihood of sales at less than fair value,* it can move on to the ITC and seek a conclusion that, nevertheless, material injury will not result. As an alternative, a party can forego review by the ITA and go directly to the ITC. The latter strategy must result in the unalterable presumption in the ITC review that such sales as there will be, will be at less than fair value.

to the legislative history, notwithstanding the Supreme Court's admonition that "[g]oing behind the plain language of a statute ... is 'a step to be taken cautiously' even under the best of circumstances," *American Tobacco Co. v. Patterson*, 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (quoting *Piper v. Chris–Craft Indus.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)), the Court is unable to discern any indication of Congressional intent which contradicts the language of the statute. In discussing review based on changed circumstances, the Senate Finance Committee Report accompanying the Trade Agreements Act of 1979 states:

> In addition *the authority could review, upon request, a determination* that a subsidy exists or *that less-than-fair value sales exists.* The ITC could review, upon request, a determination that a domestic industry is being injured by reason of imports of subsidized merchandise or imports of merchandise sold at less than fair value.
>
> *The authority* and the Commission *would initiate reviews under this provision only if they are satisfied that "changed circumstances" sufficient to warrant the review exist.* Absent a showing of "good cause", the ITC would not review a final affirmative injury determination under the countervailing duty or antidumping duty law and the administering authority would not review (1) ... or (2) a final affirmative determination that a subsidy exists or that sales at less-than-fair value exist, less than 24 months after the date of publication of notice of that determination.
>
> *If the administering authority determines, during a review under this section, that* a subsidy or *sales at less-than-fair value no longer exists, the administering authority could, after that review, revoke, in whole or in part,* a countervailing duty order or *an antidumping order.*

S.Rep. No. 249, 96th Cong., 1st Sess. 80 (1979), *reprinted in* 1979 U.S. Code Cong.

& Admin. News 381, 466 (emphasis added); *accord* H.Rep. No. 317, 96th Cong., 1st Sess. 72 (1979). This language, which largely echoes that of the statute, is consistent with the principle that a change in circumstances triggers a review and is not a substitute for such a review.

Despite the foregoing, defendant, *see Defendant's Memorandum* at 14, seeks to buttress its position by relying on the last sentence of the following passage from the legislative history to the Trade and Tariff Act of 1984:

> [The amendment to § 751(a)] is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority. The committee intends the administering authority should provide by regulation for the assessment of antidumping and countervailing duties on entries for which review is not requested.... Further, the administering authority should be able to revoke antidumping or countervailing duties [sic] that are no longer of interest to domestic interested parties.

H.R.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin. News 4910, 5220, 5298.

The Conference Committee Report accompanying the 1984 amendments principally discusses two alterations of § 1675. First, it explains the amendment providing for periodic review of an antidumping order only upon request. Second, it expounds upon language added to § 1675(b) which was designed "to clarify the role of the ITC in review investigations under section 751 of the Traiff [sic] Act of 1930." H.R.Conf.Rep. No. 1156 at 182, *reprinted in* 1984 U.S. Code Cong. & Admin. News at 5299. Clearly, neither of these amendments addresses—much less endorses—the concept that loss of majority support for an antidumping order disposes of Commerce's statutory obligation to conduct a review under § 1675(b).[6] The Court is, therefore,

---

**6.** Indeed, the Report concludes that "[i]n short, the ITC must determine that, in light of the

'changed circumstances,' the revocation of the order will not result in material injury or threat

highly reluctant to rely on a snippet of legislative history to inform its interpretation of the statutory provision at issue here.

In any event, where an interested party, such as Gilmore, opposes revocation, it is incorrect to conclude that the antidumping order is "no longer of interest to domestic interested parties" even though the order is not supported by a majority of domestic producers.[7] Moreover, the Conference Committee's statement should be analyzed in the context of the existing language of § 1675. Both § 1675(a) and the interpreting regulation, 19 C.F.R. § 353.53a(a)(1) (1987),[8] appear to provide for annual review of an antidumping order on request of a single interested party. Thus, if it is true that Gilmore's "interest" in the antidumping order would be sufficient to obtain review under § 1675(a), then the Court finds no basis upon which to view Gilmore's interest as any less sufficient for purposes of § 1675(b) review.

Finally, the Court must reject defendant's proposed analogy between the initiation of an antidumping investigation and the continuation of an antidumping order. The petition filing requirements explicitly demand that a petition be offered "on behalf of an industry." 19 U.S.C. § 1673a(b) (1982 & Supp. III 1985). In contrast,

§ 1675 contains no reference to industry support as a precondition for obtaining review of an antidumping order. *See* 19 U.S. C. § 1675(a)–(c). More fundamentally, the government's position ignores the principle that "a review investigation [does not] begin[ ] on a clean slate just as though it were an original investigation to determine whether an antidumping order should be put into effect." *Matsushita*, 750 F.2d at 932.[9] An antidumping order was originally issued because upon investigation into Gilmore's properly filed petition, the ITA and ITC, respectively, made determinations of dumping and injury. *See* H.R.Conf.Rep. No. 1156 at 182, *reprinted in* 1984 U.S. Code Cong. & Admin. News at 5299. ("For that reason, a section 751 review does not begin from an entirely neutral starting point."). To the extent that revocation occurred in this case in violation of the statutory requirements, Commerce's action amounts to a disregard of those determinations. The Court, in the absence of any support in the statutory text or in the relevant legislative history, is unwilling to sanction that disregard by fashioning, what, in effect, amounts to an additional rule of standing that would require Gilmore to demonstrate majority support in order to obtain the review mandated by § 1675(b).

---

of material injury to the U.S. industry." H.R. Conf.Rep. No. 1156 at 183, *reprinted in* 1984 U.S. Code Cong. & Admin. News at 5300. In light of the obligation imposed on the ITC, the Court, absent a clear indication to the contrary, is unwilling to presume that Congress intended that the § 1675(b) review to be undertaken by the ITA is complete once changed circumstances are identified.

7. The Court observes that the definitional section of subtitle IV of Title 19 of the United States Code distinguishes between an "industry" and an "interested party." *Compare* § 1677(4)(A) ("'industry' means the domestic producers as a whole of a like product, or those producers whose collective output of the like product constitutes a major proportion of the total domestic production of that product....") *with* § 1677(9)(C) ("interested party" includes a manufacturer, producer, or wholesaler in the United States of a like product).

8. The pertinent portion of the regulation provides:

(a) *Request for administrative review.* (1) Each year during the anniversary month of the publication of an order or finding ... an interested party, as defined in section 771(9)(B), (C), (D), (E), or (F) of the Act, may request in writing that the Secretary conduct an administrative review....

9. The following language from the decision in *Freeport Minerals Co. v. United States*, 776 F.2d 1029, 1033 n. 4 (Fed.Cir.1985) is not to the contrary:

Although the Government and intervenors attempt to distinguish between the requirements for the *initiation* of an investigation and those for the *perpetuation* of an order, they have offered no reasonable explanation why Congress would have thought the latter a less important or less critical determination warranting less current findings.

That footnote cannot be construed as an endorsement of the principle that the requirements for the initiation of an investigation are identical to those for the revocation of an order.

## Conclusion

Under the facts of this case, Commerce may not dispense, over Gilmore's opposition, with the statutory mandate to complete a review prior to the revocation of the antidumping order. Consequently, Commerce must complete an administrative review pursuant to § 1675(a) and then assess the likelihood of dumping in the absence of the order. Only at that juncture may Commerce properly make a decision as to whether revocation is warranted.

In closing, the Court stresses that, by virtue of this opinion, it simply holds that Commerce's decision to revoke was not in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(1)(B) (1982) since the agency failed to fulfill its statutory obligation to complete a review prior to revocation. The Court offers no comment on the manner in which the results of the required review should bear on the decision to revoke. Any decision on that matter must necessarily await further proceedings in this action.