**OREGON STEEL MILLS INC.,**
**Plaintiff–Appellee,**

v.

**UNITED STATES (DEPARTMENT OF COMMERCE AND INTERNATIONAL TRADE ADMINISTRATION) and Pohang Iron & Steel Co., Ltd., Defendants–Appellants.**

Nos. 88–1242, 88–1243.

United States Court of Appeals, Federal Circuit.

Nov. 23, 1988.

John H. Cutler, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., argued for plaintiff-appellee. With him on the brief was Esta L. Brand.

Elizabeth C. Seastrum, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendants-appellants ITA. With her on the brief were John R. Bolton, Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief were Robert H. Brumley, Deputy General Counsel, M. Jean Anderson, Chief Counsel for Intern. Trade, Lisa B. Koteen and Tina M. Stikas, Atty.–Advisers, Office of the Deputy Chief, Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

Donald B. Cameron, Jr., Mudge Rose Guthrie Alexander & Ferdon, Washington, D.C., argued for defendants-appellants Pohang Iron. With him on the brief was Julie C. Mendoza.

Before NIES, BISSELL and ARCHER, Circuit Judges.

NIES, Circuit Judge.

This appeal is from the final judgment and order of the Court of International Trade in *Gilmore Steel Corp. v. United States*, 672 F.Supp. 1459 (Ct. Int'l Trade 1987), *vacated in part*, No. 86–05–00606 (Ct. Int'l Trade Order Dec. 24, 1987) (Tsoucalas, J.), which required the Department of Commerce, International Trade Administration (ITA), to reinstate an antidumping duty order imposed on Korean carbon steel plate imports. The facts underlying this proceeding are set out in detail in the opinion of the Court of International Trade, familiarity with which is presumed. Briefly, the ITA issued an antidumping order, pursuant to 19 U.S.C. § 1673–1673g (1982 & Supp. IV 1986), covering steel plate from Korea. *See* 49 Fed.Reg. 33,298 (Aug. 22, 1984). Thereafter, the governments of the United States and Korea entered into a Voluntary Restraint Agreement (VRA) pursuant to the Steel Import Stabilization Act of 1984 (SISA), Pub.L. No. 98–573, 98 Stat. 2948, *reprinted in* 19 U.S.C. § 2253 note (1982 & Supp. IV 1986), under which Korea agreed, *inter alia*, to quantitative restrictions on imports for these goods *conditioned* upon revocation of the subject antidumping order. To effectuate that condition precedent, the ITA, in effect, surveyed the domestic industry. Six of the seven producers of carbon steel plate in the United States opted in favor of the VRA over antidumping duties. Only Oregon Steel Mills Inc., then Gilmore Steel Corp., favored the antidumping duty order.

Pursuant to authority the ITA found in 19 U.S.C. § 1675(b) and (c) (1982 & Supp. IV 1986), the ITA proceeded to revoke the antidumping order on the ground of lack of industry support for its continuance. *See* 51 Fed.Reg. 13,042 (April 17, 1986). Oregon Steel filed suit in the Court of International Trade, seeking to set aside the ITA's revocation, and prevailed on the legal ground that the ITA had not complied with the statutory provisions governing revoca-

tion. More particularly, the ITA did not determine, indeed, made no attempt to determine, that sales of Korean steel plate at less-than-fair-value (LTFV) had ceased, which, per the court, was a necessary determination for revocation by the ITA. *Gilmore Steel*, 672 F.Supp. at 1465. On appeal,[1] the ITA maintains that, under section 1675, it may revoke an antidumping order because of lack of industry support and need not investigate whether current sales of the subject goods are LTFV sales. We agree. No other ground for holding the revocation improper is asserted. Accordingly, we reverse the trial court's judgment and vacate its order directing the ITA to reinstate the subject antidumping duty order.

## II

### *Issue*

Whether the ITA's authority under 19 U.S.C. § 1675(c) to revoke an antidumping duty order is dependent upon a finding that LTFV sales of the imports which are subject to the order had ceased.

## III

### *Opinion*

### A

When a determination has been made under 19 U.S.C. § 1673d(a) (1982 & Supp. IV 1986) that certain imports are being, or are likely to be, sold in the United States at less than fair value to the injury of a United States industry, antidumping duties are imposed in an amount to correct the "unfair" pricing of such imports. Because market conditions are dynamic, the statute provides for subsequent revision of the amount of the duties, as well as for complete or partial revocation of the antidumping duty order. The pertinent provisions of the statute relating to the ITA's authority on these matters are found in 19 U.S.C. § 1675, which provides, as amended in 1984:

**§ 1675. Administrative review of determinations**

---

1. This court has jurisdiction under 28 U.S.C. § 1295(a)(5) (1982).

**(a) Periodic review of amount of duty**

**(1) In general**

At least once during each 12-month period beginning on the anniversary of the date of publication of ... an antidumping duty order ... the administering authority [(the ITA)], if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

....

(B) review, and determine ... the amount of any antidumping duty, ...

....

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

....

**(b) Review upon information or request**

**(1) In general**

Whenever the administering authority ... receives information concerning, or a request for the review of, ... an affirmative determination made under section ... 1673d(a) ... of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register....

....

**(c) Revocation of ... antidumping duty order**

The administering authority may revoke, in whole or in part, ... an antidumping duty order ... after review under this section.

Oregon Steel argues for affirmance of the trial court's ruling that a review is merely "triggered" under section 1675(b) by evidence of "changed circumstances" and that the review by the ITA of its affirmative determination requires the ITA to make an investigation into LTFV sales under section 1675(a), which the ITA here failed to make. Thus, per Oregon Steel, the ITA laid no foundation to exercise its revocation authority.

One appellant, the government, argues that the Secretary of Commerce has reasonably interpreted the statute to permit revocation for reasons other than the cessation of LTFV sales, see 19 C.F.R. § 353.54(c)(3) (1987); that the court failed to give deference to the administrative authority's interpretation; and that the court's interpretation renders section 1675(b) superfluous and, therefore, meaningless. Appellant Pohang Iron & Steel Co., Ltd. (POSCO) argues more specifically that only section 1675(b) provides for review of an affirmative determination under section 1673d(a) and, thus, it is the review necessary for purposes of revocation; that a change in circumstances not only triggers review, but also may provide a basis, if the change negates any element that was a prerequisite for the ITA's affirmative determination, for revocation of the order; that normally the "changed circumstances" are the cessation of LTFV sales, found after a review under section 1675(a), which is an element of the ITA's affirmative determination; that another element in the affirmative determination is, however, industry support for the antidumping duty order; and, thus, that lack of industry support alone is a ground for revocation.

It is unclear whether the government endorses POSCO's analysis of the statute or treats a LTFV review under section 1675(a) and a changed circumstances review under section 1675(b) as different bases for revocation. Under either view, however, the ITA's revocation authority, per appellants, need not rest on the performance of a review under section 1675(a).

B

A straightforward reading of the above-quoted statutory provisions indicates that section 1675(a) allows the ITA to adjust the amount of antidumping duties; section 1675(b) allows the ITA to review its affirmative determination; and section 1675(c) gives the ITA authority to revoke an outstanding antidumping order "after review under this section." Logically, revocation must be predicated on section 1675(b) review, not merely on review under section

1675(a). Simply because, under subsection (a), duties are reduced to zero for a particular review period does not mandate revocation of the underlying section 1673d(a) affirmative determination. Moreover, under the Secretary's interpretation of the ITA's revocation authority, a finding of no LTFV sales, after review under section 1675(a), at most may trigger a further review. *See Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505, 506–07 (Fed.Cir.1987). This interpretation is reflected in the implementing regulation, 19 C.F.R. § 353.54 (1987), which provides in part:

> (a) *In general.* Whenever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order or a suspended investigation are no longer being made at less than fair value within the meaning of section 731 of the Act *and is satisfied that there is no likelihood of resumption of sales at less than fair value,* he may act to revoke or terminate, in whole or in part, such Order or Finding or suspended investigation. [Emphasis added.]

Thus, a section 1675(a) review is insufficient in itself to provide a ground for revocation of the antidumping duty order. Section 1675(b), by its terms, is the section providing for review of the ITA's section 1673d(a) affirmative determination itself.

Section 1675(b) sets out no specific conditions for setting aside an extant section 1673d(a) affirmative determination. This court has recognized that, of necessity, the Secretary has been given broad discretion in administering the antidumping laws. As held in *Smith–Corona Group v. United States*, 713 F.2d 1568, 1571 (Fed.Cir.1983):

> The Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, establishes an intricate framework for the imposition of antidumping duties in appropriate circumstances. The number of factors involved, complicated by the difficulty in quantification of these factors and the foreign policy repercussions of a dumping determination, makes the enforcement of the antidumping law a difficult and supremely delicate endeavor. The Secretary of Commerce ... has been entrusted with responsibility for implementing the antidumping law. The Secretary has broad discretion in executing the law. [Footnotes omitted.]

The Secretary, as above indicated, may revoke if there are no LTFV sales and there is *no likelihood* of the *resumption* of such sales. Normally, this requires review over a period of no less than three years. 19 C.F.R. § 353.54(c). To hold that the Secretary is limited to this restrictive basis for revocation would not be in line with our previous decisions nor with the flexibility usually associated with broad, discretionary authority. It is not surprising, therefore, that the Secretary has also interpreted the ITA's authority to include revocation where its review under 1675(b) shows that the industry which the antidumping order is designed to protect is no longer interested. The record indicates Commerce has revoked eighteen antidumping duty orders (and fourteen countervailing duty orders) based upon "lack of interest" by the domestic industry.[2]

**2.** A. *Antidumping Duty Order Revocations: Carbon Steel Wire Rod from Trinidad & Tobago*, 52 Fed.Reg. 47,440 (Dec. 14, 1987); *Offshore Platform Jackets & Piles from Japan*, 52 Fed.Reg. 41,604 (Oct. 29, 1987); *Offshore Platform Jackets & Piles from the Republic of Korea*, 52 Fed.Reg. 41,603 (Oct. 29, 1987); *Certain Steel Wire Nails from the People's Republic of China*, 52 Fed.Reg. 33,463 (Sept. 3, 1987); *Tool Steel from West Germany*, 51 Fed.Reg. 30,687 (Aug. 28, 1986); *Stainless Steel Wire Rod from France*, 51 Fed. Reg. 30,687 (Aug. 28, 1986); *Stainless Steel Strip Products from West Germany*, 51 Fed.Reg. 28,- 739 (Aug. 11, 1986); *Stainless Steel Strip Products from France*, 51 Fed.Reg. 28,738 (Aug. 11, 1986); *Carbon Steel Plate from Korea*, 51 Fed. Reg. 13,042 (Apr. 17, 1986); *Certain Steel Pipes & Tubes from Japan*, 50 Fed.Reg. 43,758 (Oct. 29, 1985); *Circular Welded Pipes & Tubes from Korea*, 50 Fed.Reg. 42,582 (Oct. 21, 1985); *Steel Wire Nails from Korea*, 50 Fed.Reg. 40,045 (Oct. 1, 1985); *Carbon Steel Wire Rod from Brazil*, 50 Fed.Reg. 38,150 (Sept. 20, 1985); *Hot Rolled Carbon Steel Plate Cut to Length from Brazil*, 50 Fed.Reg. 33,815 (Aug. 21, 1985); *Hot Rolled Carbon Steel Plate in Coil from Brazil*, 50 Fed.Reg. 33,815 (Aug. 21, 1985); *Hot Rolled Carbon Steel Sheet from Brazil*, 50 Fed.Reg. 33,814 (Aug. 21, 1985); *OCTG from Spain*, 50 Fed.Reg. 30,866 (July 30, 1985).

B. *Countervailing Duty Order Revocations: Canned Tuna from the Philippines*, 53 Fed.Reg. 9788 (Mar. 25, 1988); *Carbon Steel Wire Rod from Trinidad & Tobago*, 52 Fed.Reg. 47,440

The latter basis for revocation, per appellants, parallels the original basis for imposition of an antidumping duty order whether an investigation is begun by the ITA on its own initiative or upon petition. This requirement of industry support is reflected in section 1673a(b) of the statute, which specifically states that a petition by a party seeking such investigation must be filed "on behalf of an industry."[3] We agree with the ITA that, because the purpose of an antidumping duty order is to aid an industry, not an individual company, industry support is an essential element of an affirmative determination. *See Gilmore Steel Corp. v. United States*, 585 F.Supp. 670, 674 (Ct. Int'l Trade 1984) (support of domestic industry necessary "to justify the exercise of agency's remedial powers.").

Because industry support is an essential part of the merits of an affirmative determination under section 1673, the ITA reasons that the question of continued industry support may be revisited in a section 1675(b) review of such determination, and that lack of interest by the industry is an independent basis for revocation of an outstanding order.

In rejecting the ITA's interpretation, the trial court recognized the statutory requirement for a petitioner to allege industry support for an investigation to be undertaken, but it reasoned that such requirement did not carry over into a party's right to seek review. To do so, per the trial court, would impose "an additional rule of standing that would require [Oregon Steel] to demonstrate majority support in order to obtain the review mandated by § 1675(b)." *Gilmore Steel*, 672 F.Supp. at 1464. That conclusion with respect to Oregon Steel's "standing" does not, however, answer the question raised here with respect to the ITA's authority. Oregon Steel does not seek to force the ITA to "review" the antidumping order; it seeks to preclude the ITA from revoking it on the ground that the review undertaken was deficient. Again, we must agree with the ITA that, just as industry support underlies the merits of an order, lack of industry support provides a ground for its revocation.[4] The ITA's role is not limited to mere determination of the existence of LTFV sales either in imposing or revoking an antidumping order.

We believe this conclusion follows from the structure and language of the statute and, thus, the Secretary's interpretation is reasonable and must be upheld. *See, e.g., Melamine Chems., Inc. v. United States*, 732 F.2d 924, 928 (Fed.Cir.1984). Additional support, however, can also be found in the other parts of the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 2948, which amended the sections we have been considering. The provision for review of the amount of the duties (section 1675(a)), which previously had been mandatory each

---

(Dec. 14, 1987); *Offshore Platform Jackets & Piles from the Republic of Korea*, 52 Fed.Reg. 41,606 (Oct. 29, 1987); *Stainless Steel Plate from the UK*, 51 Fed.Reg. 29,144 (Aug. 14, 1986); *Pipes & Tubes from Yugoslavia*, 51 Fed.Reg. 28,614 (Aug. 8, 1986); *Carbon Steel Products from Austria*, 51 Fed.Reg. 16,880 (May 7, 1986); *Bars & Shapes from Mexico*, 51 Fed.Reg. 16,880 (May 7, 1986); *Small Diameter Carbon Steel Pipes & Tubes from Korea*, 50 Fed.Reg. 43,757 (Oct. 29, 1985); *Cold–Rolled Carbon Steel Flat–Rolled Products from Korea*, 50 Fed.Reg. 41,473 (Oct. 10, 1985); *Carbon Steel Wire Rod from South Africa*, 50 Fed.Reg. 41,372 (Oct. 10, 1985); *Carbon Steel Wire Rod from Brazil*, 50 Fed.Reg. 38,150 (Sept. 20, 1985); *Carbon Steel Wire Rod from Spain*, 50 Fed.Reg. 37,560 (Sept. 16, 1985); *Carbon Steel Products from Brazil*, 50 Fed.Reg. 36,460 (Sept. 6, 1985).

3. 19 U.S.C. § 1673a(b) (1982 & Supp. IV 1986) provides:

An antidumping proceeding shall be commenced whenever an interested party ... files a petition with the administering authority, on behalf of an industry, which alleges the elements necessary for the imposition of the duty imposed by section 1673 of this title, and which is accompanied by information reasonably available to the petitioner supporting those allegations.

4. We do not need to define "lack of support" with precision in this case. The lack of industry support here is overwhelming. Moreover, the industry is not simply indifferent, but has expressed a positive desire to eliminate the antidumping order in order to secure other benefits. *See* 51 Fed.Reg. at 13,043 (majority of industry indicates a desire to revoke order). We also do not reach POSCO's argument that loss of industry support for an existing order creates a "jurisdictional defect" in such order.

year, became necessary only "upon request of an interested party." The Conference Report gives this explanation for the change:

[The amendment to § 751(a)] is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority. The committee intends the administering authority should provide by regulation for the assessment of antidumping and countervailing duties on entries for which review is not requested.... Further, the antidumping authority should be able to revoke antidumping or countervailing duties that are no longer of interest to domestic interested parties.

H.R.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin. News 4910, 5220, 5298. Although this explanation is precious little evidence of congressional intent, or more accurately, the conferees' understanding of the ITA's authority, there is nothing to the contrary. At least this much is clear: Administrative reviews of LTFV sales are expensive and burdensome. If industry interest is lacking, Congress intended to eliminate that investigative burden.

Of perhaps greater significance is the part of the statute known as the Steel Import Stabilization Act (SISA), which is Title VIII of the Trade and Tariff Act of 1984. The VRA, which the industry supports here, was entered "to ensure that the foreign share of the United States market for steel products is commensurate with a level which would obtain under conditions of fair, unsubsidized competition." SISA § 803, 98 Stat. at 3044, *reprinted at* 19 U.S.C. § 2253 note. Obviously, the VRA provides a surer way (with easier policing and less damage to foreign relations) to limit foreign market share than imposing antidumping duties, which presumably would achieve the same result indirectly by raising the price of foreign products. Under SISA, the President has been authorized to enforce the terms agreed to in a VRA. SISA § 805, 98 Stat. at 3045, *re-*

*printed at* 19 U.S.C. § 2253 note. In this case, the VRA requires revocation of the outstanding antidumping order as a condition precedent to its effectiveness. Reinstatement of the antidumping order here would jeopardize the comprehensive steel program envisioned in SISA. The principle that statutes enacted together must be construed *in pari materia* lends support here to our conclusion that the Secretary's interpretation should be upheld.

### Conclusion

For the foregoing reasons, the decision of the Court of International Trade holding that the Department of Commerce's action in revoking the antidumping duty order covering carbon steel plate from Korea is reversed. The order of that court directing the Department of Commerce to reinstate that order is vacated.

### Costs

Each party is to bear its own costs.

REVERSED; VACATED; AND REMANDED WITH INSTRUCTIONS TO DISMISS THE COMPLAINT WITH PREJUDICE.