**MANUFACTURAS INDUSTRIALES DE NOGALES, S.A., Karen Internacional, S.A. de C.V. and Elegance De Baja California, S.A., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–03–00373.**

United States Court of International Trade.

July 24, 1987.

Brownstein Zeidman and Schomer, Irwin P. Altschuler, David R. Amerine and Denise T. DiPersio, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, Office of the Asst. Gen. Counsel for Import Admin., U.S. Dept. of Commerce Eileen P. Shannon, Washington, D.C., for defendant.

## MEMORANDUM

AQUILINO, Judge:

After a third administrative review of a countervailing-duty order on leather wearing apparel from Mexico, the International Trade Administration, U.S. Department of Commerce ("ITA") determined (1) to instruct the Customs Service not to assess countervailing duties on merchandise shipped by the plaintiffs or to require collection of cash deposits of estimated such duties from them but also (2) not to revoke the order as to them.

The plaintiffs have moved pursuant to CIT Rule 56.1 for judgment on the agency record, setting aside the decision not to revoke on grounds that they have not ap-

plied for or received any countervailable benefits during the period covered by the administrative reviews, or at any other time, and that the decision is unsupported by substantial evidence on the record and is not in accordance with law.

## I

■ The plaintiffs had requested revocation as to them pursuant to 19 C.F.R. § 355.42, which provides, in part:

(a) *In general.* Whenever the Secretary determines that a subsidy within the meaning of [19 U.S.C. § 1677(5)] is no longer being bestowed upon the manufacture, production or exportation of merchandise which is the subject of a Countervailing Duty Order and is satisfied that there is no likelihood of resumption of the subsidy, he may act to revoke or terminate, in whole or in part, such order or suspended investigation. Ordinarily, consideration of such revocation or termination will be made only subsequent to a review as described in § 355.-41.

(b) *Application to revoke or terminate.* An application for the revocation of any Order ..., premised upon the lack of a legal basis for the imposition of countervailing duties, may be submitted in writing by an interested party to the Secretary together with detailed information demonstrating that the imported merchandise no longer benefits from a net subsidy. Ordinarily, such an application will be considered only if the production, manufacture, or exportation of the merchandise has been without benefit of a net subsidy for at least a two-year period following the date of publication in the FEDERAL REGISTER of a Countervailing Duty Order or notice of suspension of investigation; *provided, however,* that where a firm can demonstrate that neither the production nor exportation of the merchandise had benefitted from a net subsidy during the period of or immediately prior to the investigation (but the firm did not file a timely applica-

tion for exclusion under § 355.38), the two-year period shall begin on the date of the preliminary determination regardless of whether that determination was affirmative or negative....

This regulation emanates from 19 U.S.C. § 1675(c), which states that the ITA

may revoke, in whole or in part, a countervailing duty order or an antidumping duty order ... after review under this section.... Any such revocation ... shall apply with respect to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on and after a date determined by the administering authority.

Self-evidently, this provision permits the ITA to revoke an order once it has completed a review in accordance with subsection (a) of section 1675. *See, e.g., Matsushita Electric Industrial Co. v. United States,* 823 F.2d 505 (Fed.Cir.1987).

Plaintiffs' position is that, although the ITA has some discretion whether or not to revoke the outstanding countervailing-duty order, this authority is limited by facts and circumstances of the kind herein. They argue that, since the ITA has determined that they *"never* received countervailing subsidies and therefore could not possibly 'resume' receipt of such subsidies"[1], there could be "no likelihood of resumption" as specified in the regulation, and, consequently, denial of revocation was an abuse of its limited authority. *See* Plaintiffs' Brief, pp. 24–26.

Although accurate in asserting that something non-existent cannot be "resumed", plaintiffs' conclusion that therefore "the ITA's discretionary authority would appear to be inapplicable to the instant case"[2] does not necessarily follow. First, the ITA has no obligation under the statute or its regulation, *supra,* to make a determination as to whether firms like the plaintiffs have applied for or received benefits at times other than during an administrative-review period, and the defendant disputes their contention that the ITA did, in fact, determine that the countervailable

---

**1.** Plaintiffs' Brief, p. 14 (emphasis in original).

**2.** *Id.* at 28.

benefits had never been bestowed upon the plaintiffs.[3] Moreover, "resumption", as used in the regulation, can be construed to apply to the subsidization of the merchandise in question rather than individual manufacturers thereof.[4] Second, even assuming the plaintiffs had, as they claim, satisfied all of the requirements for revocation contained in section 355.42, the ITA was not required to grant their request. Both the regulation and the statute simply state that an order *may* be revoked. Finally, contrary to plaintiffs' restrictive reading of the regulation, the court concludes that the ITA's authority to determine the lack of likelihood of future subsidization, and ultimately whether to grant revocation, though not unbounded, is not circumscribed by lack of evidence of prior enjoyment of benefits. Although history of subsidization can enter into its likelihood-of-resumption analysis, the ITA's discretion is not divested by one found favorable to an applicant for revocation. Here, for example, the plaintiffs received no benefits during the period encompassing the investigation and administrative reviews, January 14, 1981 through June 30, 1983, but absence of subsidies for such a period does not guarantee revocation. Paragraph (b) of the regulation merely provides that an application for revocation ordinarily will be considered only upon a showing of lack of benefit of a subsidy for at least two years following publication of an order.

In sum, the court concludes that the determination of the ITA under review herein was in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(1)(B).

## II

Section 1516a(b)(1)(B) also states that the court shall hold unlawful the determination if unsupported by substantial evidence on the record.

The ITA's preliminary determination pointed out:

> There are at least nine programs [in Mexico] which we have found countervailable and which continue to be applicable to leather wearing apparel, namely the eight programs covered in this review as well as the Article 94 loans program found countervailable in the final determination on cement from Mexico (48 FR 43063, September 21, 1983). CEDI has been suspended, but not eliminated, and the other eight programs remain in effect. As long as these programs are still in existence and usable by manufacturers and exporters of leather wearing apparel, we cannot be satisfied that there is "no likelihood of resumption of the subsidy," and therefore, preliminarily determine that the order should not be revoked with respect to these three firms. 49 Fed.Reg. 39,183 (Oct. 4, 1984).

This position was essentially reiterated in the final determination[5], and the defendant now argues that

> [i]n circumstances in which a number of programs bestow countervailable bounties or grants upon manufacturers or exporters and there is no showing that plaintiffs are ineligible to receive benefits under these programs and could not avail themselves of the benefits bestowed by any of these programs in the future, the ITA's decision is clearly supported by substantial evidence in the administrative record and constitutes a reasonable exercise of statutory and regulatory discretion granted in connection with the revocation of outstanding countervailing duty orders. Defendant's Memorandum, pp. 12–13 (footnote omitted).

---

**3.** See Defendant's Surreply to the Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Judgment on the Agency Record, p. 2.

**4.** As so construed, the ITA should not entertain an application for revocation where there is *any* subsidization of the merchandise covered by an order. The plaintiffs refute such an interpretation, claiming that paragraph (b), as well as the reference to revocation "in whole or in part" in

paragraph (a) and in the statute, clearly allow for revocation of an order on a firm-by-firm basis. Since the defendant does not dispute the plaintiffs on this point [*see* Defendant's Memorandum, p. 13, n. 2], and since resolution of this issue would not affect the outcome of this action, the court does not address it further.

**5.** See 50 Fed.Reg. 6,024 (Feb. 13, 1985).

■ The plaintiffs characterize this as "*post hoc* rationalization" [6] for an incorrect determination since the ITA did not indicate during its three administrative reviews that their assurances, certifying that they have "never applied for or received benefits ... and ... will not apply for or receive such benefits in the future" [7] under the various programs, were inadequate. Plaintiffs' Reply, pp. 9 and 13. Further:

> Even if Defendant's new position was properly before the Court, however, Plaintiffs submit that the demonstration of continuous *de facto* non-use exceeds the requirement of *de jure* ineligibility.... The ITA's regulations merely require that a firm seeking revocation ... show that it has received no countervailable benefits for at least a two-year period.... *Id.* at 9–10.

The plaintiffs assert that their assurances, as well as certifications from the Mexican government to the same effect [8], satisfy this requirement, thereby justifying revocation. *See id.* While those assurances were considered adequate to avoid any countervailing duty on plaintiffs' entries and to set a zero cash-deposit rate for future entries, they do not engender automatic revocation of an outstanding order.[9]

■ The plaintiffs seem to ignore the fact that "[t]his investigation was conducted at all because these attorneys requested on behalf of their clients that it should be." *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 937 (Fed.Cir. 1984) (additional views of Nichols, J.). Accordingly, it was for them to "come forward with ... real evidence" to persuade the ITA to revoke the order. *See id.* Although the plaintiffs contend that their assurances met this burden, the agency was not obligated to rely on them [10], nor was it required to look for evidence, demonstrating the likelihood that they intended to receive subsidies in the future, in order to controvert those statements. *See id.* at 933. As the court explained in *Matsushita*, a case anologous to this action in that it involved a determination by the International Trade Commission ("ITC") not to revoke an antidumping-duty order, in "no case will the Commission ever be able to rely on concrete evidence establishing that, in the future, certain events *will* occur upon revocation" [11], and "circumstantial evidence from which to infer likely intent ... [is] always relevant and, indeed, may be more reliable than self-serving declarations." *Id.* at 934. There, as here, the agency determined that the order could not be revoked with certainty that there was no likelihood of future unfair trading.

■ The evidence in the record on which the ITA based this determination reveals that, for the period under review, the plaintiffs were eligible for benefits under at least the following seven of eight countervailable programs investigated: (1) Fund for the Promotion of Exports of Mexican Manufactured Products ("FOMEX"); (2) the Guarantee and Development Fund for Medium and Small Industries ("FOGAIN"); (3) Certificates of Fiscal Promotion ("CEPROFI"); (4) National Industrial Development Plan ("NIDP") preferential discounts; (5) Industrial Equipment Fund ("FONEI"); (6) State Tax Incentives; and (7) Import Duty Reductions and Exemptions.[12]

In examining the issue of whether this evidence is sufficient to support the ITA's determination to deny plaintiffs' revocation

---

6. Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Judgment on the Agency Record [hereinafter cited as "Plaintiffs' Reply"], p. 2.

7. Record Documents ("R.Doc.") 53, 65 and 66.

8. *See* R.Doc. 49.

9. *Compare* R.Docs. 4 *and* 6 (regarding certification process for zero deposit rate applications) *with* 19 C.F.R. § 355.42.

10. *See, e.g., American Permac, Inc. v. United States*, 10 CIT ——, 656 F.Supp. 1228, 1233 (1986).

11. *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (emphasis in original).

12. In their briefs, the parties dispute the "reinstatement" of the Certificado de Devolucion de Impuestos ("CEDI") program, another benefit which had been available to the plaintiffs. Resolution of this disagreement by the court is unnecessary as it does not affect the outcome herein.

request, the court recognizes that the agency has broad discretion in the enforcement of the trade laws and that the ITA's "decision does not depend on the 'weight' of the evidence, but rather on [its] expert judgment ... based on the evidence of record." *Matsushita Electric Industrial Co. v. United States*, 750 F.2d at 933. Moreover, its expertise is entitled to "tremendous deference" [13] by a reviewing court, which "must accord substantial weight to an agency's interpretation of a statute it administers". *Zenith Radio Corporation v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978).

Viewing the record in this light, the court cannot conclude that the ITA's determination not to revoke is unsupported by substantial evidence within the meaning of 19 U.S.C. § 1516a(b)(1)(B). To conclude otherwise would, at a minimum, require a more compelling showing by the plaintiffs of no likelihood of future subsidization.[14] As acknowledged by Judge Nichols in his additional views [15] in *Matsushita,* those urging a result contrary to an agency determination have untaken "a heavy load indeed". 750 F.2d at 937.

The plaintiffs, in relying solely on their non-receipt of benefits and their assurances that such abstinence would continue [16], have not carried that load herein. While these points of reliance are of some moment and this court does not automatically equate eligibility for benefits with likelihood of receipt, it nevertheless is unable to conclude that the ITA acted unreasonably in denying revocation. Similar to the circumstances in *Matsushita,* where the Federal Circuit affirmed the ITC's determination not to revoke notwithstanding the lack of evidence establishing that the dumping would occur after revocation, plaintiffs' "failure to come forward with any real evidence" to the contrary justifies the ITA's "refusal to lift the order". 750 F.2d at 937.

Plaintiffs' contention that the regulation governing exclusion from an order, 19 C.F.R. § 355.38, somehow mandates revocation under 19 C.F.R. § 355.42(a) does not further their position. Even assuming that the plaintiffs would have been excluded from the instant order upon timely application, the court cannot conclude that the ITA therefore acted unlawfully in denying their request for revocation. The language granting the ITA discretion to revoke when it "is satisfied that there is no likelihood of resumption" of a subsidy distinguishes this regulation from the former, which is only applicable prior to imposition of an order.[17] Once the order is lawfully in effect, it need not be revoked if there is an inadequate showing that an applicant will not benefit in the future from that which has been found countervailable.

## Conclusion

In view of the foregoing, the court is unable to grant plaintiffs' motion for judgment on the agency record. Rather, judgment must enter, denying the motion and dismissing this action. While the fairness of this necessary result might be debated, given plaintiffs' position, it is hardly untenable: they have not been assessed any countervailing duty nor required to post any cash deposit.

---

13. *Smith-Corona Group, Consumer Products Division, SCM Corp. v. United States,* 713 F.2d 1568, 1582 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

14. Were the plaintiffs the only firms eligible for countervailable benefits, and were those benefits fewer in number, reason might have dictated revocation. *See, e.g., Glass Beads from Canada,* 46 Fed.Reg. 16,099 (March 11, 1981) (ITA revoked order where only one firm was subject to it and only two programs were found countervailable).

15. The court's opinion indicates that these views "have not been incorporated [therein] only because they read so well as separately stated." 750 F.2d at 936, n. 14.

16. *See, e.g.,* R.Doc. 82.

17. The court draws the same distinction as it applies to plaintiffs' similar claim regarding the statutory and regulatory provisions governing suspension of an investigation under 19 U.S.C. § 1671c(b), as implemented by 19 C.F.R. § 355.-31.

JUDGMENT

This action having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED that the motion of plaintiffs Manufacturas Industriales de Nogales, S.A., Karen Internacional, S.A. de C.V. and Elegance de Baja California, S.A. for judgment on the agency record be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DE-CREED that this action be, and it hereby is, dismissed.