861 F.2d 257
 10 ITRD 1929
 MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., Matsushita
Electric Corporation of America, Panasonic Hawaii, Inc.,
Matsushita Electric of Puerto Rico, Inc., Victor Company of
Japan, Ltd., and US JVC Corp., Plaintiffs-Appellants,
v.
The UNITED STATES; Department of Commerce; Malcolm T.
Baldridge, Secretary of Commerce; Bruce Smart, Under
Secretary of Commerce; Paul Freedenberg, Assistant
Secretary of Commerce For Trade Administration; Gilbert B.
Kaplan, Deputy Assistant Secretary of Commerce for Import
Administration, Defendants-Appellees.
 No. 88-1463.
 United States Court of Appeals,
Federal Circuit.
 Nov. 10, 1988.
 
 A. Paul Victor, Weil, Gotshal & Manges, New York City, argued for plaintiffs-appellants. With him on the brief were Stuart M. Rosen, Philip A. Byler and Perry A. Carbone.
 Jeanne E. Davidson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendants-appellees. With her on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Robert H. Brumley, General Counsel, Stephen J. Powell, Chief Counsel for Import Admin. and John D. McInerney, Atty.-Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.
 Before MARKEY, Chief Judge, and FRIEDMAN and NEWMAN, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 
 1
 This is an appeal by Matsushita Electrical Industrial Company, et al. (Matsushita) from a portion of a memorandum opinion and order of the Court of International Trade that (1) held that the Department of Commerce (Commerce) has discretion to conduct a particular update review prior to making its final determination on whether to revoke a "dumping" finding, and (2) dismissed as unripe for review a challenge to Commerce's proposal to use a new methodology in performing the reviews. Matsushita Elec. Indus. Co. v. United States, 688 F.Supp. 617 (1988). We affirm.
 
 
 2
 * This is the second appeal to this court involving Matsushita's challenges to Commerce's administration of the review procedures established by section 751 of the Antidumping Act of 1921, as amended, 19 U.S.C. Sec. 1675.
 
 
 3
 A. The regulatory scheme. In 1971, the Secretary of the Treasury, who was originally responsible for the administration of the Antidumping Act, published T.D. 71-76, a finding that Japanese manufacturers, including Matsushita, were importing television sets at less than fair value. In 1979, administration of the Antidumping Act was transferred to Commerce. Shortly thereafter, Commerce entered into settlement agreements with the Japanese importers to settle all claims for antidumping duties assessed on or before March 31, 1979. As part of this settlement, Matsushita agreed to pay $12,526,000. Commerce agreed to revoke or modify T.D. 71-76 as soon as the facts and circumstances warranted, and to use the "traditional methodology" in conducting its administrative reviews of T.D. 71-76.
 
 
 4
 Under 19 U.S.C. Sec. 1675(a), Commerce is required to perform annual reviews of antidumping determinations. Section 1675(c) provides that the Secretary "may revoke" a dumping order after such review. The procedures for revocation based on the results of these annual reviews are outlined in Department of Commerce regulations. Under 19 C.F.R. Sec. 353.54(a), a dumping order may be revoked
 
 
 5
 [w]henever the Secretary determines that sales of merchandise subject to an Antidumping Finding ... are no longer being made at less than fair value ... and is satisfied that there is no likelihood of resumption of sales at less than fair value.
 
 
 6
 19 C.F.R. Sec. 353.54(a) (1981-86).
 
 
 7
 A Notice of Tentative Determination to Revoke or Terminate is published when it appears to the Secretary, on the basis of the initial Sec. 353.54(a) determination, that a revocation may be appropriate. 19 U.S.C. Sec. 353.54(e). Section 353.54(f) provides that "As soon as possible after publication ... the Secretary will determine whether final revocation or termination is warranted." Where the initial determination to revoke was based on a finding of no dumping during two consecutive annual reviews "the Secretary may determine that a final revocation ... is warranted only if the firm involved provides information showing no sales at less than fair value ... up to the date of publication of the 'Notice of Tentative Determination to Revoke or Terminate.' " 19 C.F.R. Sec. 353.54(e).
 
 
 8
 B. The facts of this case. Commerce conducted two annual reviews for the period April 1, 1979--March 31, 1981 (1st and 2nd rounds), and found that Matsushita's dumping margins were zero or de minimis. A notice of tentative determination to revoke was published on August 18, 1983. 48 Fed.Reg. 37,50 8. In December 1983, a hearing was held on the issue of revocation. The final results of the second annual review were published on June 10, 1985. 50 Fed.Reg. 24,278. Commerce then commenced annual reviews for the 3rd, 4th, and partial 5th rounds, covering April 1, 1981--August 18, 1983, the time between the 1st and 2nd annual reviews and the date the notice of tentative revocation was published (the "gap period").
 
 
 9
 There were delays in conducting the gap period reviews. In 1986, Commerce announced its intention to obtain more current data by conducting update reviews for the full 5th round (April 1, 1983--March 31, 1984), 6th round (April 1, 1984--February 28, 1984), and 7th round (March 1, 1985--February 28, 1986). 51 Fed.Reg. 24,883. Matsushita then filed the present suit in the Court of International Trade challenging various aspects of Commerce's actions. On Matsushita's motion, the court issued a preliminary injunction barring Commerce from conducting the proposed update reviews. Matsushita Elec. Indus. Co. v. United States, 645 F.Supp. 939 (CIT 1986). In Matsushita Elec. Indus. Co. v. United States, 823 F.2d 505 (Fed.Cir.1987), we reversed the preliminary injunction because Matsushita had not shown that it would suffer irreparable injury from participating in the update reviews.
 
 
 10
 After our decision in that case, Commerce announced its intention to complete outstanding reviews up to the date of the tentative determination to revoke (the gap period reviews), to abandon the post-tentative revocation reviews (5th, 6th, and 7th round reviews), and to conduct only one update review for the period covering March 1, 1986 to February 28, 1987 (the 8th round review).
 
 
 11
 Matsushita then asked the Court of International Trade to compel Commerce to complete the gap period reviews, to follow the "traditional methodology" in conducting the reviews, and to render a final decision on revocation. Matsushita further sought to enjoin Commerce from conducting the scheduled 8th round review. Matsushita contended that Commerce unlawfully has withheld its final decision on revocation and has acted in disregard of the statutory and regulatory framework.
 
 
 12
 In May 1988, the Court of International Trade denied most of that relief. The court held that Commerce has authority to conduct the update 8th round review. It ordered Commerce, however, to complete the outstanding reviews in T.D. 71-76 and render a final decision on revocation by November 30, 1988. With respect to the methodology issue, the court ruled that Matsushita's challenge to Commerce's use of another methodology was not ripe for adjudication.
 
 
 13
 At Matsushita's request, to which Commerce did not object, the court subsequently extended for 120 days, to March 31, 1989, the deadline by which Commerce must complete its reviews and issue a final revocation decision.II
 
 
 14
 On this appeal, Matsushita challenges the Court of International Trade's rulings (A) that Commerce did not abuse its discretion in instituting 8th round review and (B) that the issue of Commerce's choice of methodology is not ripe for review.
 
 
 15
 A. Although our decision in UST, Inc. v. United States, 831 F.2d 1028, 1032-33 (Fed.Cir.1987), makes clear that Commerce is not required to conduct any post gap period reviews, we explicitly did not foreclose the possibility of Commerce obtaining additional data. As we noted:
 
 
 16
 We are not suggesting, however, that Commerce may never consider data concerning events after publication of the tentative decision to revoke.... We cannot say that in order to determine whether there is "no likelihood of resumption of sales at less than fair value," the Secretary may not consider events after the date of the tentative revocation decision. The extent to which such post-tentative revocation decision data are required is a matter largely within the Secretary's discretion, and the answer depends upon the facts of the particular case.
 
 
 17
 831 F.2d at 1033.
 
 
 18
 Although Commerce's discretion to conduct post-tentative revocation reviews is not unbounded, at this stage of the proceedings we cannot say that Commerce has abused its discretion or otherwise acted illegally in instituting an 8th round review. At the same time that it undertook that review, Commerce terminated the reviews for the 5th (post gap), 6th and 7th periods. Commerce is now under a judicial order (for the first time) to complete its review of Matsushita by March 31, 1989, and we assume Commerce will meet that deadline. If the result of that review is an order that adversely affects Matsushita, the latter will have full opportunity to litigate the propriety of the 8th period review in any action it may bring to challenge Commerce's ruling. Such an action will permit the question of Commerce's authority to be determined on the basis of the record upon which Commerce had made its final determinations.
 
 
 19
 Matsushita has not shown that Commerce's conduct of the 8th annual review has injured it. Matsushita has not been required to pay any antidumping duties since June 5, 1981, the date the final results of the first administrative review of T.D. 71-76 were published. Admittedly, Matsushita will incur some expense in completing questionnaires on the 8th round period. However, as we have already noted in a different context, "[u]nless and until Commerce revokes the dumping finding, Matsushita is required to complete the questionnaires to facilitate Commerce's administrative reviews." Matsushita Elec. Indus. Co. v. United States, 823 F.2d 505, 509 (Fed.Cir.1987).
 
 
 20
 B. We agree with the Court of International Trade that any issue with respect to the methodology Commerce will use in conducting the reviews is not ripe for adjudication. At this time we do not know precisely what methodology Commerce will employ or what justification Commerce may have for any change in methodology it may make. Moreover, it is possible that Commerce may finally revoke the dumping order under whatever methodology it employs. If that happens, Matsushita would not be injured by any change in methodology, and there would be no reason for it to seek judicial review or for us to decide the issue. FTC v. Standard Oil Co., 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). On the other hand, if Commerce should not issue a final revocation order, the question of methodology will be reviewable upon a judicial challenge to that determination. We agree with the Court of International Trade that judicial intervention into Commerce's apparent change of methodology, including its consistency with the settlement agreements, is unwarranted at this stage.
 
 
 21
 Although we affirm the Court of International Trade's decision, we reiterate our previously expressed concern over Commerce's undue delay in completing administrative review of antidumping orders. See UST, Inc. v. United States, 831 F.2d 1028, 1032 (Fed.Cir.1987). As noted earlier, we assume--and expect--that Commerce will meet the March 31, 1989 deadline the court has imposed, and thus bring these unduly protracted administrative proceedings to a final conclusion.
 
 CONCLUSION
 
 22
 The decision of the Court of International Trade is
 
 
 23
 AFFIRMED.