TOSHIBA CORP., TOSHIBA AMERICA, INC., AND TOSHIBA HAWAII, INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 90–04–00209

(Dated November 26, 1991)

*Squire Sanders & Dempsey*, (*Robert H. Huey, William D. Kramer, Dana M. Stein, Jackie M. Huchenski, Miriam A. Bishop*) for plaintiffs.

*Frederick L. Ikenson, P.C.* (*Frederick L. Ikenson, J. Eric Nissley*) for defendant-intervenor Zenith Electronics Corporation.

*Collier, Shannon & Scott* (*Paul D. Cullen, Laurence J. Lasoff, Mary T. Staley*) for defendant-intervenors the United Electrical Workers of America, Independent; the International Brotherhood of Electrical Workers; the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers; and the Industrial Union Department, AFL-CIO.

*Stuart M. Gerson*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Jeanne E. Davidson*) for defendant.

OPINION

MUSGRAVE, *Judge*: Plaintiffs Toshiba, *et al.*, challenge the determination of the Department of Commerce not to revoke the antidumping finding T.D. 71–76 with respect to Toshiba. *Television Receivers, Monochrome and Color, From Japan; Determination Not to Revoke In Part*, 55 Fed. Reg. 11420 (March 28, 1990). The Court has jurisdiction under 28 U.S.C. 1581(c) (1991). Plaintiffs' motion for judgment on the agency record is denied, and the determination by Commerce with respect to Toshiba is affirmed.

BACKGROUND

In 1971, the Department of the Treasury published a finding that television receivers from Japan were being sold at less than fair value

("LTFV") in the United States. *Television Receiving Sets, Monochrome and Color, From Japan,* 36 Fed. Reg. 4,597 (March 10, 1971). In 1983, the Department of Commerce published its tentative determination to revoke T.D. 71–76 with respect to Toshiba based on the facts that Toshiba had not sold televisions for less than fair value or had not shipped televisions from Japan to the United States from April 1, 1979 until March 31, 1982, and had agreed to reinstatement of the antidumping finding if there were indications it made LTFV sales following revocation.

On January 24, 1990, Commerce published the final results of its administrative review of T.D. 71–76. *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review,* 55 Fed. Reg. 2,399 (January 24, 1990). Commerce stated in the notice that Toshiba had satisfied some of the requirements for revocation under 19 C.F.R. 353.54(b) (1988), but that there was insufficient evidence on the record to determine whether there is no likelihood of resumption of sales at less than fair value.

After giving interested parties an opportunity to comment on that one issue, Commerce concluded that it was not satisfied that there was no likelihood of resumption of sales by Toshiba at LTFV, and determined not to revoke the antidumping finding with regard to Toshiba. *Television Receivers, Monochrome and Color, From Japan; Determination Not To Revoke In Part,* 55 Fed. Reg. 11,420, 11,422 (March 28, 1990).

Toshiba challenges Commerce's determination not to revoke the antidumping finding on four grounds. First, by refusing to consider evidence that Toshiba would not resume shipments from Japan, Commerce unlawfully narrowed the test of 19 C.F.R. § 353.54(a) (1988) ("the regulation"), which states in part that Commerce must be "satisfied that there is no likelihood of resumption of sales at less than fair value." Second, Commerce construed "no likelihood" too restrictively, and required Toshiba to show that there was no possibility of such sales. Third, Commerce's refusal to consider company-specific information in the form of Toshiba's plans not to ship televisions to the U.S. from Japan was improper. Lastly, Toshiba argues that the determination is based on general market factors and relies on assumptions unsupported by substantial evidence.

## STANDARD OF REVIEW

Section 751(c) of the Tariff Act of 1930 commits the decision to revoke an antidumping duty order to the unfettered discretion of the Department of Commerce: "The administering authority *may* revoke, in whole or in part * * * an antidumping duty order * * * after investigation under this section." 19 U.S.C. 1675(c) (1991) (emphasis added). Commerce regulations vest this broad discretion to determine whether or not to revoke in the Secretary of Commerce.

> Whenever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order * * * are no longer being made at less than fair value * * * *and is satisfied that there is no like-*

*lihood of resumption of sales at less than fair value,* he *may* act to revoke or terminate, in whole or in part, such Order of Finding * * *.

19 C.F.R. § 353.54(a) (1988) (emphasis added).

The language of the regulations indicates that the Secretary is not compelled to grant revocation even when plaintiffs satisfy the requirements for revocation. *Matsushita Electric Industrial Co. v. United States*, 12 CIT 455, 463, 688 F. Supp. 617, 623 (1988) *aff'd*, 861 F.2d 257, 7 Fed. Cir. (T) 13 (1988).

The Court shall hold the determination unlawful if it finds the determination to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. 1516a(b)(1)(B) (1991). However, the Court "must accord substantial weight to an agency's interpretation of a statute it administers." *Zenith Radio Corporation v. United States*, 437 U.S. 443, 450–51, 98 S. Ct. 2441, 2445, 57 L.Ed.2d 337, 343 (1978). Commerce has broad discretion in enforcing the trade laws and the decision whether to revoke an antidumping order does not depend on the weight of the evidence, but on the expert judgment of the International Trade Administration based on the evidence of record. *Manufacturas Industriales De Nogales, S.A. v. United States*, 11 CIT 535–36, 666 F. Supp. 1562, 1567 (1987).

### ANALYSIS

Toshiba contends that Commerce unlawfully narrowed the standard of § 353.54(a) when it stated that "Many of Toshiba's arguments in support of revocation are intended to demonstrate that it has no incentive to resume shipments from Japan. However, the Department's concern is not whether shipments would resume, but whether dumping would occur in the event that Toshiba were to resume shipments." *Determination Not to Revoke*, 55 Fed. Reg. 11,420, 11,422 (March 28, 1990).

Toshiba argues as follows. If there are no further shipments to the United States there can be no sales at less than fair value. Therefore, a showing that there is no likelihood of future shipments should satisfy the test. Commerce abused its discretion because it disregarded Toshiba's evidence that it had no incentive to ship televisions to the United States from Japan.

The Court disagrees. While it cannot be disputed that if there are no shipments there will be no sales at LTFV, the regulation does not require Commerce to consider evidence that sales will not occur. A revocation proceeding is inherently predictive, and rarely, if ever will Commerce be able to predict with certainty what will occur upon revocation. *See Matsushita Electric Industrial Co., Ltd. v. United States*, 750 F.2d 927, 933, 3 Fed. Cir. (T) 44, 51 (1984). Toshiba does not argue that it cannot export televisions from Japan, nor has it foresworn such exports indefinitely.

Rather, Toshiba argues that it has no economic incentive to resume such exports. Such indications of incentive are often ambiguous. For example, Toshiba presented evidence that it is more expensive to manu-

facture televisions in Japan than in the United States. While this is a disincentive to export televisions to the United States from Japan, it also makes it more likely that if shipments occur, they will be at LTFV.

The regulation does not present an objective criterion for determining whether there is no likelihood of resumption of LTFV sales. Instead, the petitioner must establish this fact to the satisfaction of the Secretary. This Court does not review whether the evidence presented must satisfy the Secretary, but only whether the determination is lawful and supported by substantial evidence on the record. In assessing to its own satisfaction whether there is no likelihood of sales at less than fair value, Commerce may lawfully focus on whether any sales, if made, would be at LTFV, and disregard evidence of incentives not to resume shipments.

This reading of the regulation is not inconsistent with Article 9 of the International Antidumping Code, which provides in part that "An antidumping duty shall remain in force only so long as, and to the extent necessary to counteract dumping which is causing injury." *Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade,* Apr. 12, 1979, 31 U.S.T. 4919, 4933, T.I.A.S. No. 9650, 1160 U.N.T.S. 204. When there is evidence that LTFV sales would occur if shipments were to resume, and no evidence that shipments *cannot* occur, it is not unreasonable to conclude that an antidumping duty order is necessary to counteract dumping.

Toshiba also argues that Commerce construed the word "likelihood" in an unreasonably restrictive manner that does not comport either with its dictionary definition or with past administrative practice. "Likelihood," means the state of being likely, Toshiba contends, and as in the context of an initial antidumping investigation under 19 U.S.C. § 1673(1) (1991), Commerce should apply a "likelihood of resumption" test that considers whether a resumption of LTFV sales is imminent or can reasonably be expected. *See Kerr-McGee Chemical Corp. v. United States,* 14 CIT 344, 739 F. Supp. 613, 622–24 (1990). Instead, Commerce unreasonably based its determination on a mere potential for LTFV sales.

This argument simply ignores the language of § 353.54(a). Unlike 19 U.S.C. § 1673(1), which requires a determination that a class of merchandise "is being, or is likely to be," sold at LTFV, the regulation premises Commerce's discretion to revoke upon the Secretary's satisfaction that there is *no likelihood* of resumption of LTFV sales. The Secretary need not affirmatively find that LTFV sales are likely to be unsatisfied that there is no likelihood of LTFV sales. *Kerr-McGee* and other cases construing 19 U.S.C. § 1673 are therefore inapposite.

Toshiba further contends that Commerce's determination is inconsistent with *Final Results of Antidumping Duty; Administrative Review and Revocation in Part; Pressure Sensitive Plastic Tape from Italy,* Fed. Reg. 6,031 (Feb. 21, 1990) and similar determinations. In *Pressure Sensitive Tape,* Commerce revoked an antidumping finding based on a history of no shipments and a statement agreeing to suspension of

liquidation and reinstatement of the finding if circumstances developed indicating that LTFV sales were occurring.

In making the determination to revoke the finding for pressure sensitive tape, Commerce specifically distinguished cases such as the one at bar, stating,

> Unlike the situations presented in *Television Receivers, Monochrome and Color, from Japan; Final Results of Anitdumping Duty Administrative Review and Determination Not to Revoke* (54 FR 35,517, 35,519 (1989)) * * * there is no evidence on the record in this case that the respondent will resume sales at dumped prices subsequent to revocation.

*Pressure Sensitive Tape*, 55 Fed. Reg. at 6032.

The analysis Commerce performed in the determination at bar relies explicitly upon *Television Receivers, from Japan*, 54 Fed. Reg. 35,517 (1989), distinguished in the *Pressure Sensitive Tape* determination. Finding that Toshiba's company specific price data was insufficient to evaluate the likelihood that Toshiba would resume LTFV sales, Commerce turned to an examination of competitive pricing pressures and market conditions.

Commerce noted that its analysis of pricing and market conditions in *Television Receivers, from Japan*, 54 Fed. Reg. 35,417 (1989), had indicated that it would be difficult for Hitachi and Sanyo to resume shipments to the United States without selling at LTFV, and concluded that those conditions had not changed sufficiently to alleviate this concern with respect to Toshiba. These pricing and marketing conditions did not exist in the *Pressure Sensitive Tape* determination, and the determination at bar is not inconsistent with it.

Similarly, the other determinations cited by Toshiba either specifically state that there was no evidence of any likelihood of resumption of LTFV sales, *e.g., Choline Chloride from Canada; Final Results of Antidumping Administrative Review*, 54 Fed. Reg. 41,316 (Oct. 6, 1989), or simply do not mention any such evidence. *E.g., Elemental Sulfur from Canada; Final Results of Antidumping Duty Administrative Review and Revocation in Part*, 55 Fed. Reg. 13,179 (April 9, 1990). Like *Pressure Sensitive Tape*, they are not inconsistent with the determination at bar.

Toshiba also argues that Commerce should have based its determination upon company specific information rather than an analysis of market conditions. Commerce acknowledged in its determination that its practice is to first examine company specific data, but found that the company specific data available for Toshiba was insufficient for evaluating the likelihood of future LTFV sales.

Commerce found the data insufficient for three reasons. First, data used by Commerce in calculating zero dumping margins for three prior periods was nearly seven years old. Second, information showing that Toshiba had increased its United States market share while selling a fair value was based on televisions manufactured in the United States,

and there was no evidence that if the televisions had been imported from Japan that they would not have been sold at LTFV. Lastly, Toshiba failed to provide any data on its Japanese home market prices for comparison with its United States prices.

Toshiba maintains that the age of the data from the annual review investigations is a result of delay by Commerce, and should not prevent its use. Although it is unfortunate that the administrative reviews have taken so long, *See Sharp Corp. v. United States*, 13 CIT 951, 725 F. Supp. 549, 550 (1989) (describing litigation surrounding T.D. 71–76 as "bar wars"), Toshiba has had and made use of the opportunity to submit additional data prior to the final determination. The conclusion that data that was seven years old was insufficient to evaluate the likelihood of future LTFV sales was both lawful and supported by the record. *Compare UST, Inc., v. United States*, 831 F.2d 1028, 1033, 6 Fed. Cir. (T) 1, 6 (1987) (extent to which post-tentative revocation data are required is a matter of discretion).

Toshiba next argues that it was not possible to submit evidence that the televisions it sold in the United States would not have been sold at LTFV if they had been shipped from Japan, because Toshiba did not ship televisions from Japan during that period. Toshiba cites *Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 8 Fed. Cir. (T) 69 (1990), for the proposition that Commerce may not reject a company-specific analysis because of Toshiba's failure to provide information that does not exist. *Olympic Adhesives* held that Commerce may not resort to the "best information available" under 19 U.S.C. § 1677e(c) (1990) when a producer in an antidumping duty investigation cannot provide information requested by the International Trade Administration because such information never existed.

*Olympic Adhesives* is inapposite. Commerce did not request information that does not exist from Toshiba. Toshiba admits that it not only manufactures televisions in Japan, but performs its own LTFV analysis upon designs before it decides whether or not to produce a model in Japan. The fact that the televisions referred to by Commerce were not manufactured in Japan does not mean that it was impossible to provide information on whether such televisions could have been produced in Japan and sold in the United States at fair value.

Toshiba further argues that its home market prices cannot validly be compared with United States prices because Toshiba prices its televisions in Japan without regard to prices in the United States market. Toshiba claims that what its home market and United States prices would be if it did resume exports to the United States cannot be determined. Again citing *Kerr-McGee*, 739 F. Supp. at 623, Toshiba argues that the likelihood of dumping must be based upon actual transactions or offers for sales, not upon speculation about what its home market prices would be if it did ship televisions to the United States.

Toshiba's argument ignores the predictive nature of the revocation proceeding. The revocation proceeding was conducted at Toshiba's request and it was for Toshiba to come forward with "real evidence" to persuade Commerce to revoke the order. *Manufacturas Industriales De Nogales, S.A. v. United States*, 11 CIT at 535, 666 F. Supp. at 1566 (1987). Access to Toshiba's home market prices would have made Commerce's assessment less speculative, not more so. The fact that Toshiba believes that its home market prices would not be persuasive does not imply that Commerce improperly concluded that Toshiba's data was insufficient without them.

The Court concludes that Commerce's determination that the company specific data for Toshiba was insufficient to satisfy Commerce that there was no likelihood of resumption of sales at LTFV was both lawful and supported by substantial evidence.

Finally, Toshiba contends that in basing its determination on general market factors, Commerce relied upon assumptions that are not supported by substantial evidence in the record.

Commerce found that many of the market conditions noted in its determination to revoke T.D. 71–76 with respect to Hitachi and Sanyo in *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review and Determination Not To Revoke in Part*, 54 Fed. Reg. 35,517, 35,519 (Aug. 28, 1989), still exist, and rejected the argument that Toshiba is not affected by these conditions because of its high-end marketing strategy. These market conditions include the facts that substantial dumping margins had been found recently for several other Japanese companies exporting televisions to the United States, that competition in the United States market was also affected by imports from other countries such as Korea and Taiwan (many at LTFV), the high cost of production in Japan and the high value of the yen. Commerce conceded that the yen had declined somewhat since the determination, but not sufficiently to eliminate its concern about resumption of LTFV sales by Toshiba.

Toshiba responds that "the record demonstrates that Toshiba can and will sell at fair value when other Japanese producers do not," and that its high-end market strategy and domestic production compel the conclusion that it is unaffected by the market pressures noted by Commerce.

Commerce also noted that Toshiba and other Japanese companies are conducting a large amount of research and development of new technologies such as LCDs, some of which Commerce has determined to be within the scope of T.D. 71–76, and predicted that televisions based on these technologies will be exported from Japan to the United States. Toshiba counters that its and other Japanese companies' investments in LCD and other technologies do not indicate that televisions based on these technologies will be exported from Japan to the United States, or that if they are, that Toshiba will do so.

Toshiba's arguments urge this Court to reweigh the evidence before the ITA, which the Court cannot do. The conclusions Toshiba disputes are supported by substantial evidence upon the record. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S. Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966) quoted in *Matsushita Electric*, 750 F.2d at 933. It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *China National Arts and Crafts Import and Export Corporation v. United States*, 15 CIT 417, 771 F. Supp. 407, 409 (1991). "The standard is not *de novo*." *Kerr-McGee*, 14 CIT at 352, 739 F. Supp. at 620.

The focus of Commerce's determination was not whether Toshiba could sell televisions that it manufactured in the United States competitively, but whether it could sell televisions it manufactured in Japan competitively in the United States without selling them at LTFV. Toshiba's domestic production capacity does not bear upon this question. The conclusion that the high-end of the market is not immune from competition is also not without support, as Toshiba's own submissions indicate that other manufacturers compete in the large (over 26 inch) screen market it refers to as "high-end." And while the zero dumping margins found for Toshiba during the first, fourth and partial fifth review periods are some evidence that Toshiba can import televisions without dumping, this evidence is not conclusive.

Similarly, Commerce's conclusions concerning new technologies for televisions are not without support in the record. Toshiba is a large manufacturer of televisions, and concedes that it has invested in LCD's and other technologies which it admits have real potential for use in televisions. Evidence in the record showed Toshiba to be the second largest LCD manufacturer in Japan. A reasonable person could conclude that Toshiba will manufacture such televisions in Japan and export them to the United States.

The Court concludes that Commerce's determination not to revoke the antidumping duty order with respect to Toshiba was lawful, and supported by evidence on the record. Plaintiff's motion for Judgment on the agency record is denied, and the case is dismissed.

However, the Court is sensitive to plaintiff's desire to be spared the onus of the existing antidumping order, and perceives that the government's reluctance to revoke the order is due to its uncertainty as to Toshiba's future conduct. This litigation has a long history, and it would benefit all involved if it could be put to rest in an orderly fashion. To that end, the Court requested at oral argument that the parties attempt to reach an accommodation, perhaps involving some representations or undertaking on the part of Toshiba, which could form the basis for a

stipulated judgment. Accordingly, should the parties notify the Court by December 5, 1991 (thirty days after judgment was announced at oral argument) that they are attempting to reach such an accommodation, the Court will order a rehearing of the case or consider the forthcoming stipulations. Otherwise, the order of dismissal shall become final.