SANYO ELECTRIC CO., LTD. AND SANYO ELECTRIC INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND UNITED ELECTRICAL WORKERS OF AMERICA, INDEPENDENT; THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; THE INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE AND FURNITURE WORKERS; THE INDUSTRIAL UNION DEPARTMENT, AFL-CIO, AND ZENITH ELECTRONICS CORP., DEFENDANT-INTERVENORS

Court No. 89–09–00540

(Dated December 6, 1991)

*Sharretts, Paley, Carter & Blauvelt, P.C.* (*Gail T. Cumins* and *Ned H. Marshak*) for plaintiffs.

*Stuart M. Gerson,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Jeanne E. Davidson,* at the hearing; *Velta A. Melnbrencis,* on the brief); of counsel: *Joan L. Mackenzie,* Attorney-Advisor, Office of Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

*Collier, Shannon & Scott* (*Paul D. Cullen, Laurence J. Lasoff* and *Mary T. Staley* for defendant-intervenors the United Electrical Workers of America, Independent; the International Brotherhood of Electrical Workers; the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers; and the Industrial Union Department, AFL-CIO.

*Frederick L. Ikenson, P.C.* (*Frederick L. Ikenson* and *J. Eric Nissley*) for defendant-intervenor Zenith Electronics Corporation.

MUSGRAVE, *Judge*: Plaintiffs Sanyo Electric Co., Ltd., and Sanyo Electric Inc. ("Sanyo") challenge the final determination of the Department

of Commerce not to revoke the antidumping finding T.D. 71–76 with respect to Sanyo. *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review and Determination Not to Revoke in Part,* 54 Fed. Reg. 35,517 (August 28, 1989). The Court has jurisdiction under 28 U.S.C. § 1581(c) (1991). Plaintiff's motion for judgment on the agency record is denied, and the case is dismissed.

## BACKGROUND

In 1971, The Treasury Department published T.D. 71–76, which found that televisions imported from Japan were being or were likely to be sold at less than fair value ("LTFV") in the United States. *Television Receiving Sets, Monochrome and Color, From Japan,* 36 Fed. Reg. 4,597 (March 10, 1971). In 1983, the Department of Commerce published a tentative determination to revoke T.D. 71–76 with respect to Sanyo, based on the facts that Sanyo had not sold televisions at LTFV for two years and had submitted a letter of assurance agreeing to an immediate suspension of liquidation and reinstatement of T.D. 71–76 if there were indications that Sanyo had made sales at LTFV following revocation.

On August 28, 1989, Commerce published *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review and Determination Not to Revoke in Part,* 54 Fed. Reg. 35,517. After an analysis of the effect of various market conditions, Commerce stated, "[W]e cannot conclude at this time that there is no likelihood of the resumption of LTFV sales by * * * Sanyo," and determined not to revoke the order with respect to Sanyo.

Sanyo challenges the final determination on three grounds, as follow. First, the determination was unlawfully based upon an irrebuttable presumption that Sanyo would resume shipments of televisions to the United States. Second, there is no evidence in the record that supports Commerce's presumption that Sanyo will resume sales upon revocation of the antidumping finding. Lastly, Commerce's determination that Sanyo's sales would be at LTFV, if they were to occur, is unsupported by substantial evidence in the record.

## STANDARD OF REVIEW

Section 751(c) of the Tariff Act of 1930 commits the decision to revoke an antidumping duty order to the unfettered discretion of the Department of Commerce: "The administering authority *may* revoke, in whole or in part * * * an antidumping duty order * * * after investigation under this section." 19 U.S.C. § 1675(c) (1991) (emphasis added). Commerce regulations vest this broad discretion to determine whether or not to revoke in the Secretary of Commerce.

> Whenever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order * * * are no longer being made at less than fair value * * * *and is satisfied that there is no like-*

*lihood of resumption of sales at less than fair value,* he *may* act to revoke or terminate, in whole or in part, such Order or Finding * * *.

19 C.F.R. § 353.54(a) (1988) (emphasis added).

The language of the regulation indicates that the Secretary is not compelled to grant revocation even when plaintiffs satisfy the requirements for revocation. *Matsushita Electric Industrial Co. v. United States,* 12 CIT 455, 463, 688 F. Supp. 617, 623 (1988), *aff'd* 861 F.2d 257, 7 Fed. Cir. (T) 13 (1988).

The Court shall hold the determination unlawful if it finds the determination to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1991). However, the Court "must accord substantial weight to an agency's interpretation of a statute it administers." *Zenith Radio Corporation v. United States,* 437 U.S. 443, 450–51, 98 S. Ct. 2441, 2445, 57 L. Ed. 2d 337, 343 (1978). Commerce has broad discretion in enforcing the trade laws and the decision whether to revoke an antidumping order does not depend on the weight of the evidence, but on the expert judgment of the International Trade Administration based on the evidence of record. *Manufacturas Industriales De Nogales, S.A. v. United States,* 11 CIT 531, 535–36, 666 F. Supp. 1562, 1567 (1987).

ANALYSIS

Sanyo first argues that the determination was based upon an irrebuttable presumption that Sanyo would resume sales in the United States. In its brief to the Court, Sanyo does not elaborate on the precise nature of the presumption, or where in the determination it is relied upon, but concentrates instead on showing why such a presumption is illegal. At oral argument, Sanyo stated that because no explicit consideration of Sanyo's evidence that it would not resume shipments appears in the Department's statement of its position, Commerce simply assumed that such shipments would occur.

An examination of the determination, however, reveals that Commerce did not presume or determine that Sanyo *would* resume shipments. Rather, Commerce stated that given market condition, "it is difficult to see how * * * Sanyo, *if they were to resume shipments* to the United States on a competitive basis, could compete in such a tight market without selling at LTFV." *Television Receivers, from Japan; Final Determination* 54 Fed. Reg. at 35,519 (emphasis added). Based on this observation, Commerce found it could not conclude there was no likelihood that Sanyo would resume LTFV sales, and determined not to revoke the order with respect to Sanyo.

The regulation does not require Commerce to determine whether or not shipments will resume. Instead, the plaintiff must establish to the satisfaction of the Secretary that there is no likelihood of the resumption of LTFV sales. Commerce is not required to affirmatively find that shipments are likely to resume, or else be satisfied that no likelihood of

LTFV sales exists. By couching its assessment of whether Sanyo could export to the United States without selling at LTFV in the conditional, Commerce declined to assess the likelihood that Sanyo would resume shipping.

While as Sanyo argues, there can be no LTFV sales if there are no shipments, Sanyo does not argue that it *cannot* resume shipments, nor has it foresworn shipments. Instead, it argues it has no economic incentive to resume shipments. This Court does not review whether the evidence must satisfy the Secretary, but only whether the determination is lawful and supported by substantial evidence on the record. 19 U.S.C. § 1516a(b)(1)(B). In assessing to its own satisfaction whether there is no likelihood of sales at less than fair value, Commerce may lawfully focus on whether any sales, if made, would be at LTFV, and disregard evidence of incentives not to resume shipments.

This reading of the regulation is not inconsistent with Article 9 of the International Antidumping Code, which provides in part that "An antidumping duty shall remain in force only so long as, and to the extent necessary to counteract dumping which is causing injury." *Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade*, Apr. 12, 1979, 31 U.S.T. 4919, 4933, T.I.A.S. No. 9650, 1160 U.N.T.S. 204. When there is evidence that LTFV sales would occur if shipments were to resume, and no evidence that shipments *cannot* occur, it is not unreasonable to conclude that an antidumping duty order is necessary to counteract dumping.

The point is illustrated by Sanyo's contention that the "irrebuttable presumption" of resumed sales is inconsistent with *Tempered Sheet Glass from Japan, Final Results Administrative Review and Revocation*, 49 Fed. Reg. 8,975 (March 9, 1984). In that review Commerce revoked an antidumping duty order against Asahi Glass Company, in part because Asahi no longer manufactured glass covered by the order. In contrast, Sanyo admits that it still manufactures televisions in Japan.

Sanyo also argues that *Elemental Sulphur from Canada; Final Results of Antidumping Duty Administrative Review and Revocation in Part*, 55 Fed. Reg. 13,179 (April 9, 1990) is inconsistent with the present determination. In that review, Commerce revoked an antidumping with respect to four companies; two had made sale at not less than fair value for two years, and two had made no shipments for four years. *See Elemental Sulphur from Canada; Preliminary Results of Antidumping Duty Administrative Review, Tentative Determination To Revoke In Part, and Intent To Revoke in Part*, 54 Fed. Reg. 8,770, 8,771 (March 2, 1989). However, *Elemental Sulphur* makes no mention of market conditions or other factors which would indicate that LTFV sales were likely, and the determination is not in conflict with the one at bar.

In the course of the review, Sanyo provided a comparison of purchase price and foreign market value of two televisions to Commerce. Commerce noted that Sanyo provided no "back-up documentation," and concluded that a sample of two hypothetical sales was insufficient to

determine that there was no likelihood that LTFV sales would resume after so many years of no shipments. *Television Receivers, From Japan; Final Results*, 54 Fed. Reg. at 35,519. Sanyo contends that it was forced to resort to hypothetical sales comparisons because it was not shipping televisions from Japan to the United States, and argues that finding them insufficient imposes an unreasonable burden of proof.

Unlike the cases Sanyo cites, *e.g., Silver Reed America, Inc. v. United States*, 12 CIT 910, 915, 699 F. Supp. 291, 295 (1988), Commerce did not impose a "catch-22" burden of proof, or require Sanyo to submit information that did not exist. Rather, Commerce found a single-page submission that does not indicate the sources of the figures it contains insufficient to persuade it that there is no likelihood that LTFV sales will resume. Nothing in the determination indicates that Commerce required Sanyo provide information which did not or could not exist.

Sanyo argues that "The [Department of Commerce's] determination that Sanyo was likely to resume LTFV sales upon revocation of T.D. 71–76 was unsupported by substantial evidence in the record." This argument fails because it is founded upon the erroneous assumption that Commerce found that Sanyo was likely to resume LTFV sales. In accordance with the governing statute and regulation, Commerce found instead that it could not conclude that there is no likelihood of resumption of LTFV sales. *Television Receivers From Japan, Final Results*, 54 Fed. Reg. at 35,519.

Finally, Sanyo contends that Commerce's determination that Sanyo's sales, if they were to occur, would be at LTFV is unsupported by substantial evidence. Sanyo argues that Commerce should not have found its sales price comparisons insufficient; that the finding that other Japanese companies have recently been found to be selling televisions at LTFV is not relevant to whether Sanyo would sell at LTFV; that Commerce's discussion of LCD televisions was irrelevant; and that the other market factors mentioned in the finding were irrelevant or insufficient to establish that Sanyo is likely to sell televisions at LTFV.

The Court disagrees. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S. Ct. 1018, 1026–27, 16 L. Ed. 2d 131 (1966) quoted in *Matsushita Electric Industrial Co., Ltd. v. United States*, 750 F.2d 927, 933, 3 Fed. Cir. (T) 44, 51 (1984). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *China National Arts and Crafts Import and Export Corporation v. United States*, 15 CIT 417, 771 F. Supp. 407, 409 (1991). "The standard is not *de novo*." *Kerr-McGee Chemical Corp. v. United States*, 14 CIT 344, 739 F. Supp. 613, 620 (1990).

The assertion that Commerce should not have rejected Sanyo's price comparisons asks the Court to weigh the evidence. Sanyo argues that Commerce had the power to verify the information, and that the evidence reflected a careful analysis based on company-specific cost considerations. However, the investigation was conducted at Sanyo's request, and it was for Sanyo to come forward with real evidence to persuade Commerce to revoke the order. *Manufacturas Industriales De Nogales,* 11 CIT 531, 666 F. Supp. at 1566. The fact that Commerce had the power to verify the information did not require it to accept at fact value the undocumented assertions contained in the price comparison.

The evidence of market factors considered by Commerce, including sales of televisions at LTFV by companies other than Sanyo, the likelihood of development and production of LCD televisions in Japan, import restrictions in the European Community and the value of the yen were relevant to the determination. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. These market factors are indicative of present and future competitive pricing pressures in the United States, and thus make it more probable that televisions imported from Japan would be sold at LTFV.

Moreover, the difficulty Commerce had in envisioning how Sanyo could resume shipments to the United States on a competitive basis without selling at LTFV based on these market factors is not unreasonable. The determination that Commerce could not conclude there is no likelihood of the resumption of LTFV sales by Sanyo is thus supported by substantial evidence on the record.

### CONCLUSION

The Court concludes that the determination not to revoke T.D. 71–76 with respect to Sanyo was in accordance with law and supported by substantial evidence on the record. Plaintiff's motion for judgment on the agency record is therefore denied, and the case is dismissed.

However, the Court is sensitive to plaintiff's desire to be spared the onus of the existing antidumping order, and perceives that the government's reluctance to revoke the order is due to its uncertainty as to Sanyo's future conduct. This litigation has a long history, and it would benefit all involved if it could be put to rest in an orderly fashion. To that end the Court requested at oral argument that the parties attempt to reach an accommodation, perhaps involving some representations or undertaking on the part of Sanyo, which could form the basis for a stipulated judgment. Accordingly, should the parties notify the Court by December 5, 1991 (thirty days after Judgment was announced at oral argument) that they are attempting to reach an accommodation, the Court will order a rehearing of the case or consider the forthcoming stipulations. Otherwise, the order of dismissal shall become final.